**IN THE UNITED STATES OF AMERICA
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **KIMBERLY ST. CLAIR,** ) | **CASE NO. 5:09CV2736** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff, Kimberly St. Clair ("St. Clair"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying St. Clair's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court vacates and remands the final decision of the Commissioner for further proceedings consistent with this opinion.

## I. Procedural History

On July 12, 2006, St. Clair filed an application for POD, DIB, and SSI, alleging a disability onset date of May 5, 2006, and claiming that she was disabled due to back pain. Her application was denied both initially and upon reconsideration. St. Clair timely requested an administrative hearing.

On March 31, 2009, an Administrative Law Judge ("ALJ") held a hearing during which St. Clair, represented by counsel, testified. Bruce Holderead, a vocational expert ("VE") also

testified.  On April 28, 2009, the ALJ found St. Clair was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, St. Clair claims the ALJ erred by: (1) not properly articulating his reasons for rejecting the opinion of Arsal Ahmad, D.O.; and (2) finding that St. Clair did not meet or equal listing 1.04A.

## II.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

St. Clair was insured on her alleged disability onset date, May 5, 2006, and remained insured through the date of the ALJ's decision, April 28, 2009.  (Tr. 19.)  Therefore, in order to be entitled to POD and DIB, St. Clair must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period

---

[1]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

St. Clair was born on June 8, 1967. (Tr. 17.) At thirty-eight on the alleged onset date, St. Clair is defined as a younger individual. *See* 20 C.F.R. § 404.1563(c); 20 C.F.R. 416.963(c). She has a high school education, and has past relevant work experience as a dental assistant, fast food worker, and delivery driver. *Id.*

### III. Summary of Commissioner's Decision

The ALJ found St. Clair established medically determinable, severe impairments due to degenerative disc disease of the lumbar spine status post microdiscectomy and decompression at L5-S1, bipolar disorder, and attention deficit disorder ("ADD"); however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. St. Clair is unable to perform her past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that St. Clair is not disabled.

### IV. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence

3

but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## V. Analysis

According to medical records, St. Clair first complained of back pain to Vincent Perkowski, D.O., her family physician in April, 2003. (Tr. 225.) After experiencing persistent pain, tests were conducted between 2004 and 2006, including magnetic resonance imagings ("MRI"), x-rays, and nerve conduction studies.[2] (Tr. 225, 235-237.) In February, 2006, she underwent orthopaedic surgery performed by Jeffrey Cochran, D.O. (Tr. 262, 289-290.) Following surgery, she reported "some improvement," and was "walking quite well." (Tr. 283.) She was referred to physical therapy and cleared for light duty work, with no lifting over 15 pounds. (Tr. 283.)

On April 21, 2006, after a fall three weeks earlier caused increased pain, St. Clair underwent a lumbar spine MRI, which showed changes, as follows:

---

[2]An MRI in October 2004 showed a herniation that contacted the nerve root, but for which there was no evidence of "clear" nerve root impingement. (Tr. 237.) A nerve conduction and EMG (electromyography) study done in September 2005, showed mild S1 radiculopathy. (Tr. 236.) A subsequent EMG and nerve conduction study performed in May 2006 demonstrated "chronic right L5 radiculopathy." (Tr. 254, 257.) After an x-ray taken in February, 2006, the radiologist noted: "Degenerative changes somewhat unusual in a patient of this age at L5-S1, minimally progressive when compared to remote films from 2000." (Tr. 235.)

    1. There is postsurgical change on the right at L5-S1. There is some enhancing tissue in the surgical bed, thought to represent scar tissue. This may contact the S1 nerve root. The nerve roots are not obviously displaced.

    2. The remaining lumbar levels are unremarkable in appearance.

(Tr. 234.)

She continued to see Dr. Perkowski, who treated her with a variety of pain medications and osteopathic manipulation ("OMT"). (Tr. 218-233.) In April, 2006, Dr. Perkowski refused to prescribe pain medications to St. Clair because of "previous inappropriate refill requests," and instead referred her to a pain management specialist. (Tr. 192.) She was ultimately treated by pain management specialist Vladimir Djuric, M.D., of the Ohio Rehab Center, from October 2006 through February 21, 2007. (Tr. 382-401.) On May 17, 2007, she began treating with Arsal Ahmad, D.O., also associated with the Ohio Rehab Center. (Tr. 410-426.) The May 17th visit consisted of Dr. Ahmad reviewing St. Clair's medications, Duragesic and Percocet, and advising her to continue physical therapy. (Tr. 410-426.)

On May 30, 2007, Dr. Ahmad completed a RFC questionnaire. (Tr. 405-408.) He noted that she was limited to lifting and carrying less than 10 pounds frequently and occasionally; could stand and walk about 2 hours in an 8-hour workday; could sit about 3 hours in an 8–hour workday; could sit and stand for 30 minutes before changing position; and needed to walk around every 45 minutes for about 5 minutes. (Tr. 404-406.) Dr. Ahmad also indicated that St. Clair needed to shift at will from sitting or standing/walking, and sometimes needed to lie down at unpredictable intervals, although he was "unsure" how often this was required. (Tr. 406.) Dr. Ahmad indicated St. Clair could occasionally twist, stoop, and climb stairs, but could never crouch or climb ladders. (Tr. 407.) Dr. Ahmad further indicated that reaching or pushing and pulling could add low back stress, that St. Clair should avoid even moderate exposure to extreme temperatures, and that she would be absent more than three times a month. (Tr. 407-408.) He based his conclusions on St. Clair's February 2006 surgery, her disc herniation, and her lumbar degenerative disc disease. (Tr. 406.)

St. Clair continued treating with Dr. Ahmad on a monthly basis through September, 2008. (Tr. 411.) She also treated with chiropractor Kenneth Haycock, D.C., from December 29,

2006, through February 12, 2007. (Tr. 381.) On a questionnaire completed by Dr. Haycock on February 12, 2007, for the Bureau of Disability, he indicated that St. Clair's only limitation was "no lifting." *Id*.

On November 20, 2006, a state agency physician, Eli Perencevich, D.O., completed a RFC assessment. (Tr. 348-355.) He found St. Clair could lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit about 6 hours in an 8-hour workday; and push/pull to an unlimited degree. (Tr. 349.) Dr. Perencevich also found St. Clair could frequently stoop and crouch, but never climb ladders, ropes or scaffolds. (Tr. 350.) On April 3, 2007, state agency physician, Lynne Torello, M.D., reviewed the medical evidence, and affirmed Dr. Perencevich's findings. (Tr. 404.)

St. Clair argues that the ALJ did not properly articulate his reasons for rejecting the opinion of Dr. Ahmad. The Commissioner responds that substantial evidence supports the ALJ's determination. The Commissioner also argues that Dr. Ahmad should not be considered a treating physician because, when he completed the RFC questionnaire, he had, at best, examined St. Clair only one time. (Doc. No. 18 at 13; Tr. 426.) The Commissioner, therefore, contends that Dr. Ahmad's opinions are not "treating physician opinions" eligible for controlling weight. *Id.*

St. Clair rebuts the Commissioner's argument with evidence that Dr. Ahmad practiced at Ohio Rehab along with Dr. Djurcic, and, therefore Dr. Ahmad had full access to the relevant records. (Doc. No. 19 at 3.) St. Clair further asserts that the Commissioner's argument misses the primary point – that the ALJ's decision is internally inconsistent due to the weight he gave to parts of Dr. Ahmad's RFC opinion. *Id.*

Regarding Dr. Ahmad's opinion, the ALJ stated:

Arsal Ahmad, M.D., a pain management management specialist, has treated Ms. St. Clair for back and leg pain since at least June 2007 (Exhibit 21F). On May 30, 2007, Dr. Ahmad completed a questionnaire regarding Ms. St. Clair's work capacity (Exhibit 19F). He opined that Ms. St. Clair could lift less than 10 pounds occasionally and frequently, stand and/or walk for two hours of an eight-hour day, and sit for about three hours of an eight-hour day. He indicated that she could not sit or stand for more than 30 minutes without interruption. He stated that Ms. St. Clair must walk around for five minutes every 45 minutes. Dr. Ahmad said that Ms. St. Clair would need the opportunity to shift at will from

6

> sitting to standing or walking and may need to lie down at unpredictable intervals during a work shift. He determined that Ms. St. Clair could not crouch or climb ladders, but could occasionally twist, stoop, bend, and climb stairs. He indicated that reaching overhead, pushing, and pulling could add low back stress. He also indicated that Ms. St. Clair should avoid even moderate exposure to extremes of temperature. Dr. Ahmad concluded that Ms. St. Clair would miss more than three days of work a month due to her impairments. Dr. Ahmad's opinion is given some weight, specifically regarding Ms. St. Clair's ability to lift, sit, stand, and walk and regarding postural limitations. However, I gave less weight to his opinions that Ms. St. Clair must walk for five minutes every 45 minutes, lie down during an eight-hour period, and that she would miss more than three days of work a month. These opinions are not supported by the medical evidence, including Dr. Ahmad's own treatment notes, which repeatedly describe Ms. St. Clair as being in no acute distress and having a normal gait (Exhibit 21F, pp. 9-15).

(Tr. 14.)

> At the hearing, the ALJ posed the following hypothetical to the VE:

> I'd like you to assume an individual under 50, 12th grade education, past vocational training as a dental assistant. And I'd like you to assume this person would be limited to lifting and carrying 10 pounds occasionally, standing and walking about a total of two in eight, one hour at a time, sitting, let's say 30 minutes at a time, total of about six in eight. After sitting for about 30 minutes, the person would need to change position for a minute or two. I think we can safely say no ladders, ropes or scaffolds. And then I'm looking for – I'm looking to see if they put any limits on stooping, crouching, crawling, kneeling and all of that. Let's just say occasional posturals, occasional stoop, crouch, crawl, kneel.

(Tr. 33-34)

The VE testified that such an individual could not perform St. Clair's past relevant work. (Tr. 34.) The VE did, however, identify several jobs that the hypothetical person could perform, including charge account clerk (1,200 local jobs), order clerk food and beverage (450 local jobs), addresser (250 local jobs). *Id.* The ALJ asked the VE to assume that it was necessary for the individual to walk for 5 minutes every 45 minutes. *Id.* The VE testified that this limitation reduces the base and there would be no significant number of jobs available. (Tr. 36.) The ALJ next asked the VE to assume the individual needed to lie down during an 8-hour shift, or that the individual was absent more than three times a month. *Id.* The VE testified that in either of these instances no jobs would be available. *Id.*

> The Regulations define "treating source" as follows:

> your own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will

7

> consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).

20 C.F.R. §§ 404.1502 and 416.902. Courts addressing this issue have noted that a doctor who has never examined a claimant cannot be considered a treating physician, simply because the doctor practices within the same practice group as claimant's actual treating doctor. *See Walker v. Comm'r of Soc. Sec.*, 2009 WL 3126277, *10, Case No. 1:08cv450 (S.D. Ohio Sept. 23, 2009); *Rice v. Astrue*, 2007 WL 3023546, *3, Case No. 07-39-P-S (D. Me. Oct. 12, 2007) (reasoning that such doctor stands "in no better position than the state-agency reviewing physicians who had available to them the plaintiff's 'clinical file'"). More on point, in *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007), the Court noted that a physician will qualify as a treating source if the physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." In *Smith*, a doctor was not deserving of treating source review when the doctor examined the claimant only once and wrote a single "physical capacity evaluation." *Id.*

Based on the case law, it might well be that when Dr. Ahmad completed St. Clair's RFC evaluation, he was not her treating physician as he had, at best, examined her only one time. The ALJ did not discuss Dr. Ahmad's status at the time his decision was written. This analysis, however, is not controlling in the Court's ruling. Treating physician or not, the fact remains that the ALJ did give some weight to Dr. Ahmad's opinion as to St. Clair's ability to lift, sit, stand, and walk and regarding postural limitations. (Tr. 14.) Nonetheless, the ALJ failed to either incorporate that same portion of Dr. Ahmad's opinion when calculating St. Clair's RFC or explain why he did not. St. Clair argues that the ALJ gave "some weight" to Dr. Ahmad's opinion that St. Clair is able to sit for three hours per day, but concluded without explanation that she could sit for six hours per day. *Id.*

The ALJ concluded St. Clair has the RFC to perform sedentary work with restrictions. (Tr. 12.) Specifically, the ALJ indicated:

> She is able to lift, carry, push, and pull up to 10 pounds occasionally. She can stand and/or walk for a total of two hours in an eight-hour day and for no more

8

>than one hour at a time. She can sit for a total of six hours in an eight-hour day and for no more than 30 minutes at a time. After sitting for 30 minutes, she must be permitted to change position for a minute or two. She cannot climb ladders, ropes or scaffolds. She can occasionally stoop, crouch, crawl, and kneel. She can perform simple to somewhat complex routine tasks with no more than superficial interaction with others or more than occasional changes in routine.

(Tr. 12.) Thus, the ALJ in his hypothetical question to the VE and in his findings as to St. Clair's RFC, adopted the opinion of Dr. Ahmad as to St. Clair's ability to lift, stand, and walk, but added 3 hours to Dr. Ahmad's estimate of her ability to sit in an 8-hour workday. The state agency reviewing examiners found St. Clair could sit for about 6 hours (Tr. 349), but the ALJ gave those RFC opinions less weight as he found there was subsequent evidence indicating greater overall exertional and postural limitations then they allowed. (Tr. 16.) In fact, the ALJ's decision makes no reference to a specific finding that St. Clair could sit for 6 hours during a working day. There is no explanation in the hearing transcript or the ALJ's decision as to how the determination was made that St. Clair could sit for 6 hours in an 8-hour shift.

The Court finds that the ALJ's decision to reject the sitting limitations assessed by Dr. Ahmad is not supported by substantial evidence. For these reasons, the Court finds remand is necessary.

**Listing Impairment 1.04A[3]**

St. Clair next argues that the ALJ erred in finding she did not meet or equal listing 1.04A

---

[3] Listing 1.04 states, in pertinent part:

Disorders of the spine (e.g., herniated nucleus purposes, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1.

9

(Disorders of the Spine, Nerve Root Compression). (Doc. No. 14 at 13-15.) St. Clair contends that the ALJ was required to have used a medical expert, as set forth in the Hearings, Appeal and Litigation Law Manual ("HALLEX"). (Doc. No. 14 at 15-16.)

The Commissioner responds that the ALJ reasonably found St. Clair did not meet the listing. (Doc. No. 18 at 10.) Furthermore, the Commissioner argues that the decision to call a medical expert was within the ALJ's discretion. *See* 20 C.F.R. § 404.1527(f)(2)(iii). (Doc. No. 18 at 11.) Lastly, he contends it was the claimant's burden to prove that her impairments met or equaled a listing. (Doc. No. 18 at 12.)

St. Clair rebuts that there was objective evidence supporting a finding of nerve root compression as an EMG conducted on May, 2006, indicated "chronic right L5 radiculopathy." (Doc. Nos. 14 at 3; 19 at 2; Tr. 254, 257.) She also argues that her MRIs did not rule out nerve root compression as a cause of her pain. *Id.*

The Court addresses whether, pursuant to HALLEX, a manual used by the employees of the Social Security Administration, the ALJ was required to obtain a medical expert's opinion.

Under Social Security law, "[t]he burden of providing a ... record ... complete and detailed enough to enable the Secretary to make a disability determination [ ] rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Id.* (*citing* 10 C.F.R. § 416.917(a)). The primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases. *See Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420 (1971). The Regulations provide that an ALJ may "ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii). An ALJ's decision whether a medical expert is necessary, however, is inherently discretionary. *See* HALLEX I-2-5-32-34 (Sept. 28, 2005). HALLEX does not, for

10

the most part, alter this general rule. *See Griffin v. Astrue*, 2009 WL 633043, at *10 (S.D. Ohio Mar. 6, 2009). Moreover, federal courts have concluded that failure to follow exact procedures set forth in HALLEX does not require reversal absent a convincing showing of prejudice to the plaintiff. *See Kendall v. Astrue*, 2010 WL 1994912, *4 (E.D. Ky. May 19, 2010); *Newton v. Apfel*, 209 F.3d 448, 459-460 (5th Cir. 2000) (If prejudice results from a violation of HALLEX, the proceedings are tainted and the result cannot stand.); *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (same); *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989) (*citing* 20 C.F.R. § 416.1444) (An ALJ abuses his discretion by failing to consult a medical expert only when the testimony of such an expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations.")

In the instant matter, St. Clair references HALLEX I-2-5-34 B, which provides: "An ALJ **must** obtain an ME's opinion, either in testimony at a hearing or in response to written interrogatories:  * * * [w]hen the ALJ is considering a finding that the claimant's impairment(s) medically equal a medical listing."[4] (emphasis added.) The ALJ found, without calling a medical expert, that St. Clair did not meet listing 1.04A, reasoning as follows:

> In order for Ms. St. Clair's lumbar degenerative disc disease to meet the criteria of section 1.04, which deals with disorders of the spine, there must be evidence of nerve root compression, spinal arachnoiditis or lumbar stenosis. The record does not contain evidence of nerve root compression. An April 21, 2006 MRI scan of the lumbar spine showed post surgical changes, possible scar tissue, and possible contact of the S1 nerve roots (Exhibit 1F, p. 44); however, there is no definite evidence of nerve root compression. Even if the record contained evidence of nerve root compression, the clinical findings also required to meet section 1.04A are not consistently present throughout the record. Treating and examining physicians noted full motor strength at times and some weakness in the right lower extremity at times (Exhibit 4F, pp. 15 and 16; 5F, p.4; and 15F, p.13). Physicians also noted intact sensation at times and decreased sensation in the right lower extremity at time [sic] (Exhibits 4F, p. 15; 5F, p. 4; and 15F, p. 7). Straight leg raise testing is also inconsistent throughout the record (Exhibits 4F, pp. 15 and 16; 5F, p. 4; and 15F, p. 17). There is no evidence of spinal arachnoiditis or lumbar stenosis. Therefore Ms. St. Clair's lumbar degenerative disc disease does not meet the criteria of section 1.04.

(Tr. 10-11.) The ALJ noted that regarding nerve root compression, there was possible contact of

---

[4]The Court notes that under section A of HALLEX I-2-5-34, an ALJ **may** obtain an ME's opinion for numerous reasons, including when the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s). HALLEX I-2-5-34 (Sept. 28, 2005).

the S1 nerve roots. Moreover, he noted that the clinical findings to meet the listing were present, but not "consistently present." The ALJ appears to have interpreted the medical record, without the opinion of a medical expert, to conclude that St. Clair did not meet the listing. Upon remand, the ALJ should consider using a medical expert to determine whether St. Clair meets or equals listing 1.04A.

## VI. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is vacated and the case is remanded, pursuant to 42 U.S.C. § 405(g) sentence four[5], for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Greg White<br>U.S. Magistrate Judge

Date:   August 25, 2010

---

[5]Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).